MDR

WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gerald Vaughn Gwen, | No.   CV-24-00389-PHX-JAT (JFM) |
| Plaintiff, | |
| v. | **ORDER** |
| T. Degard, et al., | |
| Defendants. | |

Plaintiff Gerald Vaughn Gwen, who is confined in CoreCivic's Red Rock Correctional Center, is proceeding in forma pauperis in this civil rights action brought pursuant to 42 U.S.C. § 1983. In a May 17, 2024 Order, the Court dismissed the Complaint because Plaintiff had failed to state a claim and gave Plaintiff 30 days to file an amended complaint that cured the deficiencies identified in the Order.

On May 23, 2024, Plaintiff filed a Motion for Reconsideration (Doc. 10). On June 17, 2024, he filed a First Amended Complaint (Doc. 11). The Court will deny as moot the Motion for Reconsideration[1] and will dismiss the First Amended Complaint and this action.

**I.     Statutory Screening of Prisoner Complaints**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28

---

[1] Plaintiff's Motion for Reconsideration, which seeks reconsideration of the dismissal of Plaintiff's Complaint, is moot because Plaintiff's First Amended Complaint superseded the original Complaint in its entirety. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992).

U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. *Id.* at 681.

But as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe [self-represented litigant's] filings liberally." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). A "complaint [filed by a self-represented prisoner] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

If the Court determines that a pleading could be cured by the allegation of other facts, a self-represented litigant is entitled to an opportunity to amend a complaint before dismissal of the action. *See Lopez v. Smith*, 203 F.3d 1122, 1127-29 (9th Cir. 2000) (en banc).

## II. First Amended Complaint

In his two-count First Amended Complaint,[2] Plaintiff names as Defendants Deputy Warden T. Degard, Captain Brezneck, Correctional Officer Rojas, Health Services Administrator Baker, medical providers Rodriguez and Burnett, and clinical nurse N. Mora. In his Request for Relief, Plaintiff seeks injunctive relief and monetary damages.

In **Count One**, Plaintiff alleges he was subjected to an unwarranted disciplinary proceeding. Plaintiff contends that on October 20, 2021, Defendants Degard, Brezneck, and Rojas were deliberately indifferent to Plaintiff's health, safety, and well-being when they placed him in "more restrictive custody" in the Complex Disciplinary Unit (CDU) for thirteen days. (Doc. 11 at 4.)[3] He asserts a disciplinary proceeding was initiated against him "without penological justification" and subjected him to "more restrictive custody . . . [that] exceeded his sentence in . . . an unexpected manner that was different from other inmates in similar circumstances" and "imposed atypical and significant hardship on [his] relationship to the ordinary incidents of everyday prison life." (*Id*.) Plaintiff claims these Defendants also "fail[ed] to follow [the Arizona Department of Corrections, Rehabilitation & Reentry's (ADC's)] policy for a 'process due' related to disciplinary actions." (*Id*.)

Specifically, Plaintiff contends he was held in "more restrictive custody" in the CDU for thirteen days, from October 20 to November 2, 2021, without proper notice of a rule violation, any reason for the detention, or a hearing or disciplinary action. (*Id*. at 5, 8.) He alleges he was never scheduled for a disciplinary hearing for a rule violation, was never provided with a disciplinary report, and never met with a prison official regarding his CDU placement or a rule violation. (*Id*. at 5-6.) He alleges this violates ADC policies. (*Id*.) Plaintiff allegedly obtained, "through discovery," a disciplinary report in which Defendant Rojas "falsely accused [him] of harassment." (*Id*. at 6.) Plaintiff contends his comment

---

[2] Plaintiff's First Amended Complaint contains minor misspellings and misplaced or omitted apostrophes and commas. The Court, when quoting the First Amended Complaint, has corrected these without specifically noting them.

[3] The citation refers to the document and page number generated by the Court's Case Management/Electronic Case Filing system.

"did not constitute harassment" and the "single incident did not reach the level where Plaintiff's conduct was directed specifically toward [Defendant] Rojas causing her to be seriously alarmed." (*Id.* at 6-7.)

Plaintiff alleges several correctional officers reviewed surveillance recordings of the incident and concluded there was "no conduct that reaches [the] level to constitute a rule violation." (*Id.* at 7.) A sergeant purportedly concluded there was "no violation [that] required a more restrictive custody" and "decided that Plaintiff would be moved to another unit to avoid any further incidents." (*Id.*) Plaintiff asserts, however, that Defendant Brezneck overrode the sergeant's decision and "used deception to place Plaintiff in . . . more restrictive custody by telling Plaintiff that the medical staff wished to see him." (*Id.*) According to Plaintiff, "the real reason was to place [Plaintiff] into [the] CDU." (*Id.*) Plaintiff contends that once he was at the medical unit, Defendant Brezneck told Plaintiff he was "being placed in the [CDU], but failed to provide Plaintiff with a reason for his actions or state a rule violation." (*Id.*)

Plaintiff alleges that on October 29, 2021, he asked Defendant Degard why he was being detained and informed her that he had "been provided no reason" and had not "spoken to any official regarding his detention." (*Id.* at 8.) According to Plaintiff, Defendant Degard responded that a disciplinary action was pending "until she had [the] opportunity to speak with the officer involved." (*Id.*) Plaintiff contends that at that point, he told Defendant Degard that he had been held for "10 days without due process." (*Id.*)

Plaintiff also asserts that while he was in the CDU, he was "without his blood pressure medication" for ten days and did not receive "the prescribed medication in full until 15 days later." (*Id.* at 7.) He claims he filed a grievance on October 26, 2021, and Defendant Sanchez responded two days later and informed Plaintiff that the grievance had been "forwarded to [the] administration for review." (*Id.*) Plaintiff asserts he was "still without medication" and never received a "response or any type of follow-up from any prison official concerning his medications." (*Id.*)

. . . .

In **Count Two**, Plaintiff alleges Defendants Mora, Baker, Rodriguez, and Burnett were deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment, when they "intentionally denied or avoided medical treatment" and "failed to act on their knowledge [of an] injury to Plaintiff's cervical spine," despite multiple medical reports. (*Id*. at 9.) He claims this resulted in an "excessive risk of harm, easily preventable." (*Id*.)

Plaintiff alleges that during Plaintiff's initial medical examination at the Red Rock Correctional Center on March 29, 2021, Defendant Rodriguez was informed of Plaintiff's "neck injury resulting in chronic pain." (*Id*.) Defendant Rodriguez scheduled Plaintiff for an x-ray of his neck, which was performed on April 7, 2021. (*Id*.)

According to Plaintiff, he submitted an April 15, 2021 health needs request because he had not received any follow-up regarding the results of the x-ray, and an April 20 health needs request informing medical providers that his neck injury was becoming worse. (*Id*. at 10.) Plaintiff alleges he met with Defendant Rodriguez on April 21, and Defendant Rodriguez told him the x-ray results were not yet available. (*Id*.)

Plaintiff asserts he met with Defendant Burnett on July 12, 2021, for a "second opinion." (*Id*.) He contends Defendant Burnett did not conduct a physical examination or "review radiology findings," told Plaintiff that "the institution was not going to treat his injury," and ordered additional x-rays. (*Id*.)

Plaintiff claims that during an October 5, 2021 meeting with Defendant Rodriguez regarding a cardiology consultation, Plaintiff "raised the issue of treatment for his serious neck injury." (*Id*.) According to Plaintiff, Defendant Rodriguez "became defensive" and stated that he was providing Plaintiff with pain medication. (*Id*.) Plaintiff allegedly told Defendant Rodriguez that pain medication was "short term" and did not treat the injury, but Defendant Rodriguez "simply dismissed any further discussion on the issue of treatment." (*Id*.) Plaintiff contends this "demonstrated his deliberate indifference." (*Id*.)

Plaintiff alleges neither Defendant Rodriguez nor Defendant Burnett discussed the radiology reports with Plaintiff. (*Id*.)

In a discussion of his "grievance history," Plaintiff makes allegations against Defendants Mora and Baker.[4]  He contends that in 2021,

    (1)    Defendant Mora denied Plaintiff's informal complaint regarding inadequate medical treatment for his neck injury and "the length of delay in providing treatment." (*Id*. at 11.)

    (2)    Defendant Baker denied Plaintiff's medical grievance appeal "without resolution" and did not "address any issue raised." (*Id*.)  According to Plaintiff, this "amounts to deliberate indifference toward [his] serious injury." (*Id*.)

    (3)    Defendant Mora responded to a second informal complaint regarding Plaintiff's "concerns of avoidance of treatment for his serious injury," but did not "address the issue regarding treatment." (*Id*. at 12.)  Plaintiff contends the denial of his informal complaint "constitutes deliberate indifference. (*Id*.)

He also asserts that in 2023,

    (1)    Defendant Mora denied his third informal complaint regarding "the same issue of treatment for his serious neck injury," which sought a "written explanation as to why he was not receiving treatment or why treatment was being delayed." (*Id*. at 13.)

    (2)    Defendant Mora denied a medical grievance appeal, which had been submitted to the Contract Health Administrator Monitoring Bureau, thereby intentionally "undermining the fair administration of ADC['s] grievance policy." (*Id*.)

    (3)    Defendant Mora denied a grievance appeal directed to ADC's general counsel. (*Id*. at 14.)

. . . .

. . . .

---

[4] Because this appears to be a section regarding the exhaustion of his administrative remedies, Plaintiff also makes allegations regarding non-parties.  Although those allegations may be relevant to the exhaustion issue, they are irrelevant to the issue of whether Plaintiff has stated a claim against any named party.  Thus, the Court has omitted a discussion of them.

### III. Discussion

Although self-represented pleadings are liberally construed, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), conclusory and vague allegations will not support a cause of action. *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982). Further, a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled. *Id.*

#### A. Count One

This is the third lawsuit in which Plaintiff has raised the same disciplinary claim against Defendants Degard, Brezneck, and Rojas. He first raised it in *Gwen v. CoreCivic*, CV-21-02150-PHX-JAT (JFM). The Court dismissed it because Plaintiff had failed to state a claim. *See* Doc. 9 in CV-21-02150. Plaintiff raised it again in *Gwen v. CoreCivic Medical Providers*, CV-22-01294-PHX-JAT (JFM). The Court dismissed it as duplicative. *See* Doc. 6 in CV-22-01294. The Ninth Circuit Court of Appeals affirmed the dismissal. *See* Doc. 14-1 in CV-22-01294 ("The district court did not abuse its discretion in dismissing Gwen's action as duplicative because it is based on the same factual allegations as [CV-21-02150].").

As the Court explained to Plaintiff in CV-22-01294, and again in the May 17, 2024 Order in this action, an in forma pauperis complaint that merely repeats pending or previously litigated claims may be considered abusive and dismissed under the authority of 28 U.S.C. § 1915(e). *Cato v. United States*, 70 F.3d 1103, 1105 n.2 (9th Cir. 1995); *Bailey v. Johnson*, 846 F.2d 1019, 1021 (5th Cir. 1988). An in forma pauperis complaint repeating the same factual allegations asserted in an earlier case, even if now filed against a new defendant, is subject to dismissal as duplicative and frivolous. *See Bailey*, 846 F.2d at 1021. Plaintiff's claim is duplicative.

In addition, Plaintiff has failed to state a claim. As the Court stated more than two years ago in CV-21-02150:

> In analyzing a due process claim, the Court must first decide whether Plaintiff was entitled to any process, and if so, whether he was denied any constitutionally required

procedural safeguard. Liberty interests that entitle an inmate to due process are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (internal citations omitted).

To determine whether an inmate is entitled to the procedural protections afforded by the Due Process Clause, the Court must look to the particular restrictions imposed and ask whether they "'present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest.'" *Mujahid v. Meyer*, 59 F.3d 931, 932 (9th Cir. 1995) (quoting *Sandin*, 515 U.S. at 486). "Atypicality" requires not merely an empirical comparison, but turns on the importance of the right taken away from the prisoner. *See Carlo v. City of Chino*, 105 F.3d 493, 499 (9th Cir. 1997). To determine whether the sanctions are atypical and a significant hardship, courts look to prisoner's conditions of confinement, the duration of the sanction, and whether the sanction will affect the duration of the prisoner's sentence. *See Keenan v. Hall*, 83 F.3d 1083, 1088-89 (9th Cir. 1996).

Plaintiff was not entitled to any due process procedural protections because being placed in the detention unit for thirteen days was not an atypical and significant hardship. *See Sandin*, 515 U.S. at 475-76, 487 (30 days' disciplinary segregation is not atypical and significant); *Smith v. Mensinger*, 293 F.3d 641, 654 (3rd Cir. 2002) (seven months of disciplinary confinement "does not, on its own, violate a protected liberty interest"); *Jones v. Baker*, 155 F.3d 810 (6th Cir. 1998) (two and one-half years' administrative segregation is not atypical and significant); *Rizzo v. Dawson*, 778 F.2d 527, 530 (9th Cir. 1985) (prison authorities may change a prisoner's "place of confinement even though the degree of confinement may be different and prison life may be more disagreeable in one institution than in another" without violating a prisoner's due process rights); *Lucero v. Russell*, 741 F.2d 1129 (9th Cir. 1984) (administrative transfer to maximum security without a hearing does not infringe on any protected liberty interest). And because Plaintiff was not entitled to any procedural due process protections, it is immaterial that Defendants Rojas, Brezneck, and Degard may have violated the prison's policies.

> *See Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996) ("[A] prison official's failure to follow the prison's own policies, procedures or regulations does not constitute a violation of due process if constitutional minima are nevertheless met."); *Walker v. Sumner*, 14 F.3d 1415, 1419-20 (9th Cir. 1994) (if prison complies with due process requirements, failure to comply with its own, more generous procedures is not a constitutional violation), *abrogated on other grounds by Sandin*. Thus, the Court will dismiss without prejudice Count One and Defendants Rojas, Brezneck, and Degard.

Doc. 9 in CV-21-02150 at 9-11 (footnote omitted).

The allegations in Plaintiff's current First Amended Complaint, like those discussed in CV-21-02150, do not state a claim. The Court will dismiss Count One and Defendants Degard, Brezneck, and Rojas.

**B.     Count Two – Defendants Rodriguez and Burnett**

This is the third lawsuit in which Plaintiff has brought the same medical care claim against Defendants Rodriguez and Burnett. He first raised it in CV-21-02150, and the Court dismissed these Defendants because Plaintiff had failed to state a claim. *See* Doc. 9 in CV-21-02150. Plaintiff raised it again in CV-22-01294, and the Court dismissed the claim as duplicative. *See* Doc. 6 in CV-22-01294. The Ninth Circuit Court of Appeals affirmed the dismissal. *See* Doc. 14-1 in CV-22-01294. Plaintiff's claim is duplicative.

In addition to being duplicative, Plaintiff has failed to state a medical care claim against Defendants Rodriguez and Burnett. As the Court explained in CV-21-02150:

> Not every claim by a prisoner relating to inadequate medical treatment states a violation of the Eighth Amendment. To state a § 1983 medical claim, a plaintiff must show (1) a "serious medical need" by demonstrating that failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain and (2) the defendant's response was deliberately indifferent. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).
>
> "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health; "the

official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Deliberate indifference in the medical context may be shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need and harm caused by the indifference. *Jett*, 439 F.3d at 1096. Deliberate indifference may also be shown when a prison official intentionally denies, delays, or interferes with medical treatment or by the way prison doctors respond to the prisoner's medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *Jett*, 439 F.3d at 1096.

Deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's safety. *Farmer*, 511 U.S. at 835. "Neither negligence nor gross negligence will constitute deliberate indifference." *Clement v. Cal. Dep't of Corr.*, 220 F. Supp. 2d 1098, 1105 (N.D. Cal. 2002); *see also Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (mere claims of "indifference," "negligence," or "medical malpractice" do not support a claim under § 1983). "A difference of opinion does not amount to deliberate indifference to [a plaintiff's] serious medical needs." *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). A mere delay in medical care, without more, is insufficient to state a claim against prison officials for deliberate indifference. *See Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985). The indifference must be substantial. The action must rise to a level of "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 105.

. . . .

### a.  Defendant Rodriguez

Plaintiff alleges Defendant Rodriguez indicated the results of Plaintiff's initial x-rays were not available several weeks after they were taken, but prescribed pain medication and an extra pillow; was unaware of the purpose of a meeting in June 2021 and took no action regarding Plaintiff's injury at that meeting; and was deliberately indifferent in October 2021 because he "only stat[ed] that they had provided pain medication" when Plaintiff attempted to discuss his neck injury during an appointment regarding Plaintiff's consultation with a cardiologist. These allegations do not support a conclusion

> that Defendant Rodriguez acted with deliberate indifference to a serious medical need.
>
> In addition, to the extent Plaintiff claims Defendant Rodriguez was aware of radiology reports showing Plaintiff had a serious medical need and that a delay could cause further harm, Plaintiff does not allege how or when Defendant Rodriguez became aware of the radiology reports; the extent of the cervical injury; how a delay in providing additional treatment, other than the pain medication and an extra pillow, could cause further harm; or that Defendant Rodriguez was aware that a delay could cause further harm. Absent more, Plaintiff's allegations are too vague and conclusory to state a deliberate indifference claim against Defendant Rodriguez. Thus, the Court will dismiss without prejudice Plaintiff's allegations against Defendant Rodriguez.
>
> **b.     Defendant Burnett**
>
> Plaintiff claims that when he met with Defendant Burnett on July 1, 2021, Defendant Burnett told him that "the institution was not going to do anything to treat Plaintiff's injury," dismissed Plaintiff without an examination, but ordered additional x-rays of Plaintiff's neck. However, Plaintiff was already receiving pain medications and an additional pillow and, notwithstanding his statement that the institution was not going to treat Plaintiff's injury, Defendant Burnett ordered additional x-rays. Plaintiff's allegations do not support a conclusion that Defendant Burnett acted with deliberate indifference to a serious medical need. And, as was the case with Defendant Rodriguez, Plaintiff's identical allegations that Defendant Burnett was aware of radiology reports showing Plaintiff had a serious medical need and that a delay could cause further harm are too vague and conclusory to state a claim against Defendant Burnett. Thus, the Court will dismiss without prejudice Plaintiff's allegations against Defendant Burnett.

(Doc. 9 in CV-21-02150 at 11-14.)

The allegations in Plaintiff's current First Amended Complaint, like those discussed in CV-21-02150, fail to state a claim. The Court will dismiss Defendants Rodriguez and Burnett.

. . . .

- 11 -

### C. Count Two – Defendants Mora and Baker

Other than his conclusory statements, nothing in Plaintiff's allegations suggests Defendants Mora and Baker acted with deliberate indifference to a serious medical need. Plaintiff's allegations are too vague and conclusory to state a claim against Defendants Mora and Baker. Thus, the Court will dismiss Defendants Mora and Baker.

## IV. Dismissal without Leave to Amend

"Leave to amend need not be given if a complaint, as amended, is subject to dismissal." *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 538 (9th Cir. 1989). The Court's discretion to deny leave to amend is particularly broad where Plaintiff has previously been permitted to amend his complaint. *Sisseton-Wahpeton Sioux Tribe v. United States*, 90 F.3d 351, 355 (9th Cir. 1996). Repeated failure to cure deficiencies is one of the factors to be considered in deciding whether justice requires granting leave to amend. *Moore*, 885 F.2d at 538.

Plaintiff has made multiple efforts at crafting a viable complaint and appears unable to do so despite specific instructions from the Court. The Court finds that further opportunities to amend would be futile. Therefore, the Court, in its discretion, will dismiss Plaintiff's First Amended Complaint with prejudice and without leave to amend.

**IT IS ORDERED:**

(1) Plaintiff's Motion for Reconsideration (Doc. 10) is **denied as moot**.

(2) Plaintiff's First Amended Complaint (Doc. 11) is **dismissed** for failure to state a claim pursuant to 28 U.S.C. § 1915A(b)(1), and the Clerk of Court must enter a judgment of dismissal **with prejudice**.

(3) The Clerk of Court must make an entry on the docket stating that the dismissal for failure to state a claim may count as a "strike" under 28 U.S.C. § 1915(g).

. . . .

. . . .

. . . .

. . . .

(4)     The docket shall reflect that the Court, pursuant to 28 U.S.C. § 1915(a)(3) and Federal Rules of Appellate Procedure 24(a)(3)(A), has considered whether an appeal of this decision would be taken in good faith and finds Plaintiff may appeal in forma pauperis.

Dated this 1st day of October, 2024.

_____
James A. Teilborg
Senior United States District Judge